IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DESTINI VOGEL, as next of kin to MATTHEW VOGEL, deceased,** <br> Plaintiff, <br><br> v. <br><br> **CORECIVIC OF TENNESSEE, LLC** <br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    DOCKET NO. _____ <br> ) <br> ) <br> ) |

## COMPLAINT

Comes now the Plaintiff, by and through the undersigned counsel, and brings this cause of action against the Defendant and states as follows:

## PARTIES

1. Plaintiff Destini Vogel is a citizen and resident of Powell County, Kentucky. She is an adult child and a surviving next of kin of Matthew Vogel (hereinafter "Decedent"). Decedent was unmarried and had two other adult children (Derrick Vogel and Hayden Spates) and two minor children (Xavier Vogel and Matthew Parent).

2. Decedent Matthew Vogel, prior to his death, was a citizen of St. Lucie County, Florida. This was the location of his last residence, youngest child, and the mother of his youngest child. There is currently a petition for formal administration of his estate pending in St. Lucie County Florida Circuit Court. At the time of his death, he was an inmate in Wayne County, Tennessee.

3. Plaintiff Destini Vogel is the proper party to bring a wrongful death action as next of kin on behalf of her deceased father under Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-106.

1

4. Defendant CoreCivic of Tennessee, LLC, ("CoreCivic") is a private for-profit prison with its headquarters in Brentwood, Williamson County, Tennessee, located at 5501 Virginia Way, Suite 110, Brentwood, Tennessee 37027. CoreCivic owns and operates the South Central Correctional Facility, which is a private prison in the State of Tennessee. CoreCivic is and was at all times relevant responsible for the protection of its inmates housed at the South Central Correctional Facility. The South Central Correctional Facility is located in Clifton, Tennessee in Wayne County. At all times pertinent to this complaint, the correctional officers and all other employees and staff at the South Central Correctional Facility were agents/employees of CoreCivic. As such, all actions and inactions of these individuals are imputed to CoreCivic under the principles of vicarious liability, respondeat superior and other theories of agency. CoreCivic may be served by copy of the Summons and Complaint to the Registered Agent, CT Corporation System, at 300 Montvue Road, Knoxville, Tennessee 37919.

## JURISDICTION AND VENUE

5. Venue is proper in this court because all relevant matters occurred in Wayne County, Tennessee, which is located in the Columbia Division of the Middle District of Tennessee.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the Decedent and Defendant CoreCivic are citizens of different states and the amount in controversy exceeds $75,000.00. Specifically, Decedent was a citizen of Florida and Defendant CoreCivic is a citizen of Tennessee. Moreover, Plaintiff Destini Vogel is a citizen of Kentucky.

## FACTS

7. On or about August 7, 2024, Decedent was an inmate in custody at the South Central Correctional Facility.

8. Decedent was appropriated classified as for "minimum custody," which TDOC describes as appropriate for inmates who "pose the least risk to the safety of the facility staff and other inmates."

9. Shortly before Decedent was expected to be released from prison, CoreCivic[1] placed him in a cell with another inmate named Travis Bess.

10. Travis Bess had an extensive history of violent behavior, most notably the murder of three different people, including another inmate. He was originally sentenced to "life without parole" for two separate first-degree murder convictions and then, while in prison, received an additional sentence of "life without parole" for the third first-degree murder conviction for killing another inmate.

11. Travis Bess had an extensive criminal history in addition to the murders, including convictions for six counts of auto burglary, theft, aggravated burglary, two counts of aggravated robbery.

12. Travis Bess had an extensive prison disciplinary history in addition to murdering a fellow inmate, including thirteen separate infractions for things such as assault, defiance, and drugs.

13. TDOC maintains a standardized scoring system by which inmates are assigned a classification depending on several risk factors. CoreCivic is required to follow this system for the Tennessee inmates it houses.

14. Due to Travis Bess's extensive history of violence and other indicators of dangerousness, the standardized classification score presumptively rated him for "close custody,"

---

[1] CoreCivic is a corporate entity which acts through its agents. All acts and omissions attributed to CoreCivic herein are to be construed as acts and omissions by its agents.

3

which is just below "maximum security." According to TDOC, inmates on "close custody" require "heightened supervision."

15. Notwithstanding the fact that Travis Bess was rated for "close custody" by the standardized classification scoring, CoreCivic performed an "override" to reduce his classification to "medium custody."

16. CoreCivic accomplished this override modifying three of the underlying point totals as follows:

   a. For "Prior Assaultive Offense History," he was originally given 4 points for "Highest" due to his original two first-degree murder convictions and a third upon entering prison However, CoreCivic reduced his score to 0 point, which corresponded to "Lowest."

   b. For "Disciplinary Reports," he was originally given 4 points for "Two or more in the last 6 months" because he had disciplinary violations on April 26, 2024 and July 14, 2024, which both predated his "classification assessment form" scoring on July 19, 2024. However, CoreCivic reduced his score to 1 point, which corresponded to "One or more in the last 6 months."

   c. For "Prior Felony Convictions," he was originally given 4 points for "two or more" because he had far more than two prior to the murder convictions for which he was currently incarcerated. However, CoreCivic reduced his score to 0 points, which is not listed on the form as a potential score but presumably correlates to zero prior felony convictions.

17. CoreCivic had actual knowledge of the information discussed above with which to correctly calculate the scores.

4

Case 1:24-cv-00108   Document 1   Filed 12/23/24   Page 4 of 12 PageID #: 4

18. Each of the original scores recited above were proper and should not have been adjusted down under TDOC's standardized classification procedures.

19. Even aside from TDOC's procedures, the scores should not have been adjusted down under a reasonable standard of care for a prison operator.

20. The net result of the scoring adjustments was to reduce Travis Bess's score from 19 (close custody) down to 8 (medium custody).

21. Upon information and belief, CoreCivic caused Travis Bess's security classification to be reduced not for legitimate security reasons but to allow him to be supervised at a lower level so that CoreCivic could expend fewer resources due to chronic understaffing and to maximize profits.

22. CoreCivic knew or should have known that this reduction of security for an inmate such as Travis Bess would put other lower risk inmates such as Decedent at risk of harm.

23. CoreCivic knew or should have known that Travis Bess posed a danger to other inmates such as Decedent due to his significant prior history of violent and murderous behavior (including while incarcerated), his lengthy institutional record, the fact that he should have been classified as "close security," and the fact he was serving multiple life sentences and had nothing to lose.

24. Despite this danger, CoreCivic assigned him to be cellmates with Decedent, who was appropriately classified as minimum security, had never murdered anyone, and was on the verge of being released.

25. After being placed in a cell with Travis Bess, Decedent told CoreCivic staff that he was in fear of Bess and needed to be moved away because Bess was under the influence of drugs, threatening to harm Decedent, and had an extensive violent history.

26. These warnings, coupled with the risk factors known to CoreCivic, were sufficient to put CoreCivic on notice that there was a particularized risk that Bess would attack Decedent.

27. Despite these well-founded warnings, CoreCivic failed to move Decedent away from Bess, prevent Bess from obtaining objects that could be used as weapons, or otherwise provide Decedent adequate protection, leaving Decedent at foreseeable risk of attack from Bess.

28. On August 7, 2024, Travis Bess brutally murdered Decedent by striking him numerous times in the head with a drainage cover he had placed inside a pillowcase and then stabbing him repeatedly with a shard of glass from a broken TV.

29. CoreCivic failed to detect or intervene in the assault until Decedent was already dead.

30. Decedent experienced significant physical and emotional pain during the assault up until he died.

31. Decedent's next of kin experienced significant emotional harm as a result of his death.

## COUNT ONE: WRONGFUL DEATH

32. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

33. CoreCivic had a special relationship to Decedent because he was incarcerated in CoreCivic's prison.

34. CoreCivic owed Decedent a duty of care to protect him from foreseeable harm, including an attack by Travis Bess at the time in question.

35. CoreCivic breached that duty by:

   a. Causing Travis Bess's security classification to be improperly reduced in violation of TDOC's policies and an ordinary standard of care;

6

  b. Providing inadequate security to Travis Bess than what was necessitated by his prior history and risk factors;

  c. Placing Travis Bess in a cell with Decedent, who was far less dangerous;

  d. Allowing Travis Bess to have access to the items he used to assault and kill Decedent;

  e. Failing to move Travis Bess away from Decedent after Decedent told CoreCivic staff he was scared of Bess and wanted to be moved due to Bess's violent history, threats to him, and drug usage;

  f. Failing to sufficiently supervise Bess; and

  g. Failing to timely intervene to stop the assault.

36. Each of the acts and omissions described above caused Decedent's death, individually and collectively, and resulted in compensable damages.

37. It would have been feasible for CoreCivic to have acted differently than it did for each of the acts and omissions identified above.

38. CoreCivic is legally responsible for the negligent acts and omissions of its agents as described above.

39. The attack was reasonably foreseeable to CoreCivic for the reasons identified above.

40. The Plaintiff has the right to recover compensatory damages for the pecuniary value of Decedent's life, loss of future earning capacity, loss of consortium, mental and physical suffering, loss of time and necessary expenses resulting to the Deceased, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received pursuant to the Tennessee Wrongful Death statute.

## COUNT TWO: NEGLIGENCE PER SE

41.     Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

42.     CoreCivic owed a duty of care to inmates in its custody at the prison under Tennessee law.

43.     T.C.A. § 41-1-104(b) establishes a statutory scheme for the maintenance of policies and procedures, and places the obligation upon the institutional warden. The statute reads in part: "The custody, welfare, conduct, and safekeeping of the inmates shall be the responsibility of the warden, who will examine into the affairs of the institution daily to assure that proper standards are maintained."

44.     TDOC Policy 506.14(VI) (E) & (F) reads as follows: "Each Warden shall promulgate the necessary institutional policy and procedures governing housing arrangements for inmates in accordance with this policy and incorporating Tier Management Supervision for his/her facility."

45.     At all times relevant to this action, CoreCivic employed a warden at the prison who was responsible for following the statue and policy cited above and owed a duty of care to inmates at the prison including Plaintiff.

46.     Based on principles of respondeat superior and agency, CoreCivic is responsible for the negligent conduct of its warden.

47.     As described further below, the warden breached the statutory and regulatory duties by:

   a.     Allowing the prison to remain chronically understaffed,

8

Case 1:24-cv-00108     Document 1     Filed 12/23/24     Page 8 of 12 PageID #: 8

b. Creating or allowing a policy or procedure by which Mr. Bess's security classification was reduced despite the obvious risk of harm Bess posed to Decedent and other inmates, and

c. Creating or allowing a policy or procedure by which Plaintiff was permitted to be put in a cell with Mr. Bess despite the obvious risk of harm Bess posed to Decedent and other inmates.

48. The warden's acts and omissions amounted to negligence per se that were a proximate cause of Plaintiff's injuries and damages.

## **PUNITIVE DAMAGES**

49. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

50. CoreCivic has long allowed the prison to remain chronically understaffed as documented by a Tennessee Comptroller report. (https://comptroller.tn.gov/content/dam/cot/sa/advanced-search/2023/pa23025.pdf). The report noted that South Central failed to staff 49% of the assigned posts, including 13% of "critical" posts.

51. Conditions are so egregious at another one of CoreCivic's Tennessee prisons that the Department of Justice has opened an investigation to consider whether CoreCivic is able to sufficiently protect inmates from physical harm under federal law. (https://www.justice.gov/opa/pr/justice-department-announces-civil-rights-investigation-conditions-tennessees-trousdale).

52. Despite CoreCivic's ongoing failure to adequately staff the prison, and indeed in part as a result, CoreCivic has enjoyed huge profits. In 2023, it had a net income of $67.6 million. (https://ir.corecivic.com/news-releases/news-release-details/corecivic-reports-fourth-quarter-and-full-year-2023-financial). Its CEO reportedly earned $5.7 million.

53. It would have been feasible for CoreCivic to improve staffing issues and promote safety in other ways at the prison by spending more money there. For example, CoreCivic could have spent an additional $50 million annually on the prison and still made millions of dollars in profits while substantially improving safety.

54. CoreCivic had a policy of prioritizing profits over the safety and wellbeing of the inmates it has a duty to protect, which was malicious, intentional, and reckless.

55. This policy caused Plaintiff's injuries by leading CoreCivic to engage in each of the acts and omission described above, including but not limited to:

    a. Recklessly reducing Travis Bess's security classification without proper justification despite the obvious risk that would pose to inmates such as Decedent. The policy as well as the specific decision which allowed this to happen were implemented by one or more person in a management capacity acting within the scope of their employment with CoreCivic.

    b. Recklessly placing Travis Bess in a cell with Decedent despite the obvious risk he would post to him. The policy as well as the specific decision which allowed this to happen were implemented by one or more person in a management capacity acting within the scope of their employment with CoreCivic or by non-management employee(s) who were improperly hired, retained, or trained, and this was authorized, ratified, or approved with reckless disregard for Decedent's safety.

    c. Refusing to move Decedent or otherwise protect him once he warned of a specific threat made by Mr. Bess, which was committed by a CoreCivic employee who was acting in a management capacity who was recklessly hired, retained, supervised, and/or trained.

56. CoreCivic is liable to Plaintiff for punitive damages because CoreCivic's acts and omissions were done maliciously, intentionally, and/or recklessly and caused Plaintiff's injuries, individually and collectively.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff sues the Defendant and prays:

1. That proper process issue and be served upon the Defendant and it be required to answer the allegations of this Complaint.

2. That Plaintiff be awarded reasonable compensatory damages for the pecuniary value of life, loss of earning capacity, pain and suffering of the Decedent, and all other damages available pursuant to Tennessee's wrongful death statute in an amount not to exceed $1,500,000.

3. That Plaintiff be awarded reasonable punitive damages in an amount not to exceed $3,000,000.

4. That the Defendants pay all court costs, including discretionary costs of this cause.

5. That this case be heard by a jury of 6.

6. For other such general and further relief to which the Plaintiff may be entitled.

Respectfully submitted,

/s/ Benjamin K. Raybin
Benjamin K. Raybin, #29350
David J. Weissman, #25188
**RAYBIN & WEISSMAN, P.C.**
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254 (fax)

BRaybin@NashvilleTNLaw.com
DWeissman@NashvilleTNLaw.com
*Attorneys for Plaintiff*